ELBERT PHIPPS, Plaintiff in Error, v. STATE OF
TENNESSEE, Defendant in Error.

464 S.W.2d 341.

Court of Criminal Appeals of Tennessee. Sept. 14, 1970.

On Petition to Rehear Oct. 6, 1970.

Certiorari Denied by Supreme Court March 1, 1971.

David W. Shields, Jr., and T. Arthur Jenkins, Manchester, for plaintiff in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Charles S. Ramsey, Jr., Dist. Atty. Gen., Manchester, for defendant in error.

## OPINION

WALKER, Presiding Judge.

From his conviction of concealing stolen property over the value of $100 and sentence to three years in the penitentiary, the defendant below, Elbert Phipps, appeals

to this court. He was jointly indicted in Coffee County with one J. W. Pennington but was tried alone. An order nolle prosequi was entered as to Pennington.

■ Phipps first assigns as error that the record does not show that he was convicted by a jury of twelve. Under Rule 9 of our court, we grant the State's motion made before the case was called for trial showing the minute entry with the names of twelve good and lawful jurors. This assignment is therefore overruled.

The proof shows that on August 1, 1968, the McMinnville Boat Center, in Warren County, was broken into and a large number of guns were stolen. To gain admittance the aluminum front door was forced open with some instrument.

Through an informant officers learned that Pennington had some of the guns for which he wanted $300. They gave the informant this amount of money in marked bills and watched him deliver the money to Pennington at his place of business, the Jiffy Burger Drive-In, near Manchester. They later recovered the marked bills from Pennington on his arrest. The defendant and one Roger Reed, a juvenile, were also at the drive-in. Reed owned a 1961 white Pontiac automobile.

The informant left in his Thunderbird automobile and drove into the county to a place known as the Old Duck River Bridge. The officers followed and concealed themselves. In ten or fifteen minutes the defendant and Reed arrived with Reed driving his Pontiac. Reed drove alongside the Thunderbird, raised the trunk lid and he and Phipps began transferring guns to the Thunderbird. These guns were some of those taken from the McMinn-

ville Boat Center. The defendant was participating in their removal to the Pontiac.

After they had transferred five guns to the informant's car, the officers approached them. All of those participating in the delivery, including the defendant, ran after one had closed the Pontiac trunk. The officers fired some warning shots and the Manchester Chief of Police captured the defendant. When he was later interrogated after proper warnings, he denied that he was in Reed's car and explained that he was at the scene for a call of nature.

Although the officers considered the Pontiac abandoned, they obtained a search warrant and there found more guns with serial numbers corresponding to those stolen. They also found in it a crowbar which could have been used to force the door to the boat center.

The defendant, age 21, testifying in his own defense, denied any participation in the burglary or any knowledge that the guns were stolen. He says he saw Pennington put the guns in Reed's car but he had nothing to do with it; that he did not know the informant; that he fled when he heard the shots and Reed say, "Let's get out of here." He denied any knowledge of the crowbar found in the trunk of Reed's car.

■ ■ In several places in the bill of exceptions, the court reporter shows that she did not understand the answer of the witnesses. The defendant assigns this as error. We do not think the failure to show answers to these questions was prejudicial. They were not about material or determinative matters, and the defendant does not show how he could be prejudiced. In many

cases witnesses make some answers which cannot be heard by the court, the attorneys, the jury or the court reporter. In such cases it is proper for the court reporter to show only what could be heard in the courtroom. When this question was raised in Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1, 10, the Supreme Court said:

"We would feel it hypercritical, indeed, to say these defendants have not been afforded a reasonable and sufficient record."

■ The defendant contends that the state did not prove guilty knowledge on his part. This knowledge may be established by circumstantial evidence which raises inferences consistent with guilty knowledge and inconsistent with innocence. See Tackett v. State, Tenn., 443 S.W.2d 450; Smith and Shipley v. State, Tenn.Cr.App., 451 S.W.2d 716.

■ The defendant knew a large number of guns were in the trunk of the minor's automobile and that they were taking them to a remote place to transfer to a person whom he says was unknown to him. In this secluded place they were transferring guns to a person who, a few minutes before, had been with them at a public place, the Jiffy Burger. His flight may be explained to some extent by the pistol shots, but his explanation of his presence was not consistent with innocence. Under the objective test rule laid down in Kessler v. State, 220 Tenn. 82, 414 S.W.2d 115 (1967), we think the defendant had guilty knowledge of the larceny.

■ ■ Phipps says there is no proof of venue in Coffee County. The acts of concealing and aiding in concealing for which he was indicted were proven to be in

Coffee County. All of the defendant's acts in this record took place there. The rendezvous with the informant was in a rural area near a Coffee County school. He was present near Manchester when the guns were placed in Reed's car. Concealing stolen property is a separate and distinct crime from that of receiving stolen goods. Jones v. State, 219 Tenn. 228, 409 S.W.2d 169. The proper venue is where the acts of concealing or aiding in concealing occurred. This assignment is without merit.

■■ The defendant contends that the state introduced much hearsay evidence, particularly about cases involving Reed and Pennington. He says this linked him to them as coactors and codefendants. No objection was made at the trial or on the motion for a new trial. Under Rule 14(4) and Rule 14(5), these assignments are treated as waived or cured in the trial court. Furthermore, his testimony did not indicate what disposition was made of these parties and was not prejudicial.

The defendant assigns as error admittance into evidence a letter from the F.B.I. addressed to a Mr. Hopkins of the Tennessee Bureau of Criminal Identification. This letter concerns a laboratory comparison of the markings on the crowbar and the boat center door.

■ On cross-examination of T.B.I. Agent Huckaby, the defendant asked if the witness had the F.B.I. report with him. On redirect examination the State inquired of this witness about its results. The defendant objected because the report was addressed to Mr. Hopkins, wso was not on the witness stand. There was no claim that the letter was inadmissible hearsay. The injection of the F.B.I. letter was done by the defendant on

cross-examination. This evidence was also cumulative. The T.B.I. agent made his own examination of the exhibits. If the introduction of the F.B.I. letter was error, it was harmless. T.C.A. § 27-117.

The defendant says that the instructions placed on him the burden of proving his innocence. He submitted no special requests. He complains that the trial judge instructed the jury that recent possession of stolen property, unless explained, may be sufficient to sustain a conviction.

The inference from unexplained recent possession of stolen property does not shift the burden of proof to the defendant to prove his innocence.

In this state we follow the generally accepted rule that the unexplained possession of recently stolen goods may warrant an inference that the possessor has stolen them. When the proof shows that a defendant's possession was a guilty possession, slight circumstances may authorize a jury to determine whether he has been guilty of the theft or of receiving, or of concealing stolen property, knowing it to have been stolen. Smith and Shipley v. State, supra.

We find no error in the instructions. The evidence does not preponderate against the jury's verdict. All assignments are overruled.

The judgment of the lower court is affirmed.

MITCHELL and HYDER, JJ., concur.

## ON PETITION TO REHEAR

A petition to rehear has been filed in this case. It

points out no material fact overlooked by the court in reaching its opinion. All of the issues it discusses were fully considered in the original opinion of the court, to which we adhere.

The petition to rehear is denied.

Judge Oris D. HYDER, a member of the court when the original opinion was released, did not participate in the opinion on the petition to rehear.

MITCHELL, J., concurs.