Garland BATES, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

July 25, 1974.

Certiorari Denied by Supreme Court
Nov. 4, 1974.

Tyrus H. Cobb and Marvin E. Gordon, Shelbyville, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Rondal T. Wilson, Asst. Dist. Atty. Gen., Shelbyville, for defendant in error.

OPINION

MITCHELL, Judge.

The defendant Garland Bates represented by his Attorney Honorable Tyrus H. Cobb was convicted in the Circuit Court of Bedford County, on November 12, 1971 of concealing stolen property over the value of $100.00. The jury fixed the punishment at three years in the penitentiary.

After the motion for a new trial was heard and overruled by the Trial Judge

Honorable Robert J. Parkes, he pronounced judgment for not less than three years nor more than three years in the penitentiary in accordance with the verdict of the jury.

The defendant appealed and assigned the following errors:

## ASSIGNMENTS OF ERROR

1. That the evidence preponderates against the verdict of the jury.

2. That the trial court erred in failing to allow counsel to question the sheriff "as to what disposition he intended to make of the State's witness and alleged accomplice at the conclusion of the defendant's trial."

3. That the trial court erred in allowing the prosecuting attorney to question the defendant about the facts surrounding his prior convictions.

4. That the verdict is inconsistent with the evidence.

According to the State's proof, on the night of May 20, 1971, Tommy Kessey accompanied by Carey Cotheran, burglarized the Flat Creek School house in Bedford County, Tennessee, and committed larceny by taking, stealing and carrying away from the school a television set worth $300.00, two record players worth $200.00, a typewriter worth $85.00 and a movie projector worth $600.00.

Tommy Kessey testified they took these items of stolen property out behind the Robinson addition and hid them in an old trailer out in a field.

The next night they went out and moved this stolen property down Railroad Avenue down a dirt road and hid it in a wooded area along with an air conditioner unit that come out of the trailer. The articles stolen from the Flat Creek School were all marked and tagged with labels showing they belonged to the "Flat Creek School and the Bedford County Board of Education."

Tommy Kessey testified that on the following morning he talked with the defendant Garland Bates and asked him if he would buy the stolen property and he agreed that he would buy it. He and Garland Bates then borrowed a truck from the man who owned the building, in which the defendant Bates' business was located.

Kessey said he and Betty Hillis Freeman, with whom he was then living as man and wife without being lawfully married, and the defendant Garland Bates in the truck, went out to the woods where he had hidden the stolen property and loaded it into the truck. That the defendant Garland Bates drove the truck to the residence of the defendant on Depot Street. They backed the truck up to the back porch of the defendant Bates' home where they removed the stolen goods from the truck to the defendant's back porch. The labels were still on the stolen goods showing they belonged to the Flat Creek School and Bedford County Board of Education. That the cover was removed from the typewriter and the defendant's wife typed some with it.

Kessey said the defendant Bates knew where the stolen property came from. That he told him, and that the defendant was supposed to have gotten it out of town that same day. That the defendant gave him $100.00 for the stolen property and offered to help him get out of town. That Bates took the typewriter, and the movie projector and was going to keep the record player. He did not want the television, but would keep it there until he could find somebody who wanted it.

Tommy Kessey testified he had lived in Bedford County, Tennessee for two years, and prior to that had worked in Indianapolis, Indiana as a construction worker. That he had served in the Military Service and had spent 11 months in Europe and a year in Vietnam where he received a number of medals including two Bronze Stars, a Vietnam Campaign Medal, two Defensive Medals, and a Good Conduct Medal.

Kessey testified when they brought the property to the defendant Bates' house that Bates told his wife that Kessey and Betty Hillis were moving and he was going to keep the stuff over there for them until they found another place.

Kessey admitted he had been convicted of a felony and sentenced and was in the custody of the sheriff. The sheriff had made him a trusty which allowed him some freedom outside the jail. He admitted he and Betty Hillis (Freeman) were living together unlawfully. That he had escaped from jail. That he did not know when he was going to be sent to the penitentiary.

Edwin Garland Bates, the defendant, testified he is married and has three children. That in 1959 he was convicted of burglary, on a plea of guilty and served time in the penitentiary. The defendant admitted that he hauled the articles of stolen property to his home and put them on his back porch. That he did not at anytime know the merchandise was stolen. That prior to the school break-in Tommy Kessey had borrowed $100.00 from him to rent an apartment. That the next time he heard from Kessey was when he called the defendant and asked him to borrow a truck and haul "a few sticks of furniture" for him. That the defendant had not heard of the break-in at the school. That Mr. Kessey offered him $10.00 to haul the furniture for him. That the defendant asked Mr. Kessey if the "stuff is hot." That he said it was not. That it belonged to his mother-in-law and that she was going to sell it. That the defendant needed the money he had loaned to Mr. Kessey and he said "I'll tell you what, I haven't got no money to throw away, and a hundred dollars is a hundred dollars, and I'm going to keep this stuff until you pay me my money." The defendant Bates said that he did not try to conceal the merchandise in any way. That everyone that came to his house entered by the back porch.

The defendant Garland Bates testified that Betty Hillis (Freeman) worked for him but he fired her because he caught her stealing money.

That Officers Herman and Milton Sanders came and talked to him and told him a television and some musical instruments had been stolen. They did not say anything about record players nor air conditioners nor Tommy Kessey so he did not connect that with the stuff he had. That the sheriff came to see him on three different occasions. They just told him a television and musical instruments were missing and to be on the watch out for it. That somebody might come around trying to sell it. On Friday or Saturday night the Sheriff told him "Tommy Kessey said that he left some stuff here at your place" and the defendant told the sheriff "Yeah, there's some stuff on the back porch." The defendant said he took the stuff except for the television and delivered it to the officers. That he did not see any stickers on the property.

The defendant testified the sheriff asked him "How come you didn't tell my deputies Saturday that you had this stuff." I said "Well, I didn't even realize that was it, because they said a television and music instruments, and I said, 'The only thing you said was when you said Tommy Kessey, I knowed that was it.'"

The defendant said they dumped all the stuff on the back porch. That he and other people used the back porch in entering his house and going in and out of his house. "You can drive straight in my porch and set right there and see everything on my porch. The neighbor's house is right across the street and both windows are looking right in on my porch."

The defendant testified he loaned the $100.00 to Kessey as a favor to the waitress who had been with the defendant for two years and she requested it.

That the property he got from Kessey was security for the $100.00 he loaned Kessey.

The defendant admitted he asked Kessey if this property was "hot." He admitted he knew the property was worth over a hundred dollars.

Sharon Bryant testified on behalf of the defendant that Betty Freeman Hillis was at one time her sister-in-law. That Tommy Kessey asked to borrow $100.00 and she got $100.00 from the defendant Bates for Kessey. That Kessey and Betty Hillis (Freeman) were living together at Betty's mother's Georgia Hillis, on Calhoun Street. That Georgia wanted them to get out because they were not paying any rent nor helping with the groceries.

On cross-examination Sharon Bryant testified Kessey and Betty were not the kind of people that would be expected to own such type of high priced merchandise as the stolen property involved in this case. That she handed $100.00 to Kessey in the presence of the defendant Bates and at his direction.

Mr. Gale Gordon testified he saw Mrs. Sharon Bryant hand some money directly to Tommy Kessey at Garland Bates' place of business.

J. W. Patterson testified in behalf of the defendant that he heard a conversation between the defendant Bates and Tommy Kessey at the Red Ace Service Station. Mr. Patterson testified "Well, Garland asked him, said 'Who lied on me?' He said 'B. H. Sanders,' said, 'B. H. is wanting me to get up there in Court and tell a lie on you, testify that you know this stuff was stolen.' Garland said 'Well' said 'Tommy you know and I know that I'm innocent.' Said 'I didn't know the stuff was stolen.' He said 'I know that.' Said 'Garland, when I go to trial—' Said, 'I know I'm gone' said 'I know I'm going up.' "

## ASSIGNMENTS OF ERROR

We are unable to find any merit in the defendant's 1st assignment of error in which he contends that the evidence preponderates against the verdict of the jury.

We must consider this contention under the well known rule that the verdict of the jury approved by the trial judge takes away the presumption of innocence which stood as a witness for the defendant in the trial court and he is here under the presumption that he is guilty. The burden here is on the defendant to show that the evidence preponderates against the verdict and in favor of his innocence. The verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the prosecution and establishes the theory of the State. We may not overturn a conviction on the facts, unless the evidence clearly preponderates against the verdict and in favor of the defendant's innocence. White v. State, 210 Tenn. 78, 356 S.W.2d 411; Holt v. State, 210 Tenn. 188, 357 S. W.2d 57; Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Black v. State, 1 Tenn.Cr.App. 373, 443 S.W.2d 523.

It is settled law concerning jury trials in Tennessee that the jurors are the sole and exclusive judges of the evidence and of the weight and credibility of the testimony of the witnesses in the case. They are to reconcile the conflicts in the testimony of witnesses where possible but if they cannot reconcile the conflicts in the evidence they must say who and what is to be believed. State v. Logan, 224 Tenn. 228, 453 S.W.2d 766; Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105.

It is clearly established by the proof that the property in question was stolen in a burglary committed at the Flat Creek School in Bedford County, and that the stolen property was hauled by the defendant to his house and by him stored on his back porch.

By his own testimony the defendant said he was going to hold the property until Kessey payed him the money he claimed Kessey owed him.

The only question is whether the defendant had guilty knowledge that the property was stolen. The jury found that the de-

fendant did conceal the property knowing it was stolen, or under circumstances which would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion. See Kessler v. State, 220 Tenn. 82, 414 S.W.2d 115.

The testimony of the State's witnesses was to the effect that the defendant borrowed and drove the truck and went with the prosecution witness Kessey out to the woods where Kessey had hidden the stolen property consisting of a $300.00 television set, two record players worth $200.00, a typewriter worth $85.00 and a movie projector worth $600.00. All of them were labeled and marked "Flat Creek School Bedford County Board of Education," hidden out in the woods. Moreover the witness Kessey testified the defendant knew where the stolen property came from, that he told the defendant where he got it.

The jury was entitled to consider all these facts and circumstances in considering the weight and credibility of the defendant's testimony and in making a determination of the validity and reliability of the defendant's explanation of his continuous possession of the stolen property.

Evidently the jury found that these facts and circumstances showing this expensive merchandise, labeled with the name of the true owner, hidden out in the woods together with the facts surrounding the hauling and storing the stolen property by the defendant, were sufficient to charge a reasonable man with notice or knowledge or put him on inquiry which if pursued would disclose that the property was stolen. Apparently something caused the defendant to ask Kessey if the property was "hot."

By their verdict the jury as they had a right to do, rejected the defendant's explanation of the possession and storing of the stolen goods.

The jury in making a determination of the weight and credibility of the defendant's testimony, by using their reason and judgment and common sense, as the triers of the facts, were not required to believe the defendant's explanation, and where the jury does not believe the explanation offered by the defendant then his possession of the stolen property was unexplained.

In Myers v. State, Tenn.Cr.App., 470 S.W.2d 848, Judge William S. Russell, in an excellent opinion, concurred in by Judge W. Wayne Oliver, and dissented from by Judge Charles Galbreath, pointed out that:

"The unexplained possession of recently stolen property raises an inference that the possessor stole the property. Peek v. State, 213 Tenn. 323, 375 S.W.2d 863. This inference has been applied recently to infer guilty knowledge where receiving stolen property is concerned. Tackett v. State, [223] Tenn. [176], 443 S.W.2d 450. Such an inference logically also attaches to such unexplained possession of recently stolen property when the charge is concealing."

The defendant in his testimony emphasizes the fact that he did not conceal the property, that it was placed on his back porch where it could be seen by those living nearby or passing along by his porch.

In the case of James H. Kennedy, Jr. v. State, No. 37, McMinn County, Tennessee, the defendant was convicted of concealing stolen property to wit, a boat, motor and trailer of the value of $2,000.00, which was found parked in plain view in the driveway where the defendant was then living. In that case, which was heard by us at Knoxville at the October 1971 Term, Judge W. Wayne Oliver, prepared a well considered opinion, filed April 6, 1972, concurred in by Presiding Judge Mark A. Walker, and Judge Charles H. O'Brien, in which he called attention to the following quotation:

"In the law proscribing fraudulent concealment of stolen property, 'concealing' does not require an actual hiding or se-

creting of the property, but includes any act or conduct which assists the thief in converting the property to his own use, or which may prevent or render more difficult its discovery by the owner. Jones v. State, 219 Tenn. 228, 409 S.W. 2d 169; 76 C.J.S. Receiving Stolen Goods § 7; 2 Wharton's Criminal Law and Procedure (Anderson) Section 570."

We are unable to find that the evidence preponderates against the verdict and in favor of the defendant's innocence.

In his 2nd assignment of error the defendant complains the Court erred in refusing to allow defense counsel to question the sheriff about what disposition he intended to make of the State witness Tommy Kessey, the alleged accomplice, at the conclusion of the trial.

This assignment is untenable.

The proof showed the witness Tommy Kessey had pleaded guilty of a felony and had been sentenced to serve a term in the penitentiary. Clearly the disposition of his case rested with the court and not with the sheriff. The sheriff's attitude or plans if any he had were not relevant to the issues of the case.

It was shown in the proof that the sheriff had allowed Kessey so called "trusty" privileges.

There is no showing that the sheriff did not or would not carry out the orders of the Court.

We find no error in the action of the Court in sustaining the State's objection, about which this assignment of error complains. In view of the abundant evidence of the preferential treatment received by Kessey, in the sheriff's custody, while awaiting transfer to the penitentiary, whatever error may have been committed did not affect the result of the trial and may be treated as harmless error under T.C.A. 27–117.

We find no merit in the 3rd assignment of error wherein the defendant contends the trial court erred in allowing the prosecuting attorney to question the defendant about the facts surrounding his prior convictions.

The record shows that when able counsel for the defendant introduced the defendant as a witness in his own behalf he asked the defendant "All right, now, Mr. Bates, I will ask you if in 1959 when you were a teenager, if you were convicted with some other fellows of burglary?" The defendant answered he had and that he pleaded guilty and was guilty and served time for it.

This inquiry by able defense counsel may have lessened to some extent, the force of an admission that he had been convicted of a felony and served a term in the penitentiary. Doubtless the defendant thought it would be less damaging to his character to admit this conviction at the outset of his testimony than to have the alert district attorney bring it out on cross-examination. It will be noticed that only one conviction was mentioned in the defendant's direct testimony. ·

The bill of exceptions shows that the defendant's counsel in his opening statement referred to the defendant's burglary conviction in which he said he got with some older fellows when he was a teenager.

The State's counsel asked the defendant "Mr. Cobb was talking about how young you were and what an older bunch of boys you got into it with, it wasn't just a simple burglary was it?" The defendant answered "I don't remember Mr. Cobb saying anything about me being with any older fellows." Defense counsel then said "I except to going into that. He has admitted that he was convicted and served his time. I believe that is the law. And now he is starting going into it trying him again." Defense counsel and State's counsel then argued the matter before the Court. The

State's counsel then said "All I want to show is what type of burglary it was; specifically that it was a safe job." Defense counsel objected and the Court ruled and limited the cross-examination to allow the State's counsel to ask what his age was and the age of anyone else with him. The defendant then testified he was nineteen years of age when the offense was committed.

The State's counsel then asked the defendant about the number of burglary cases he had. The defendant said he did not understand and said "That's all the same charge." State's counsel then asked "You hit four different places in Bedford County, and you were convicted of hitting four?" The defendant answered "I admit that."

■ We think the State's counsel had a right to show by the defendant that he had been guilty in four burglary cases instead of one about which he testified on his direct examination.

Moreover the bill of exceptions fails to show that the defendant made any objection to the testimony where the defendant was asked and testified that he admitted he hit four different places in Bedford County.

We find no abuse of the Court's discretion in limiting the cross-examination and in allowing the State to prove that there were four burglary cases.

We think the facts concerning this assignment of error and the discretionary power exercised by the learned Trial Judge in limiting the cross-examination, falls short of the rule laid down in Hendricks v. State, 162 Tenn. 563, 39 S.W.2d 580, cited in the excellent brief of defense counsel.

In his 4th assignment of error the defendant contends the verdict is inconsistent with the evidence. With this we cannot agree.

■ Concealing stolen property knowing it to have been stolen is a separate offense from buying stolen property, and is also a separate offense from receiving stolen property.

The defendant was tried on a three count indictment charging fraudulently buying stolen property in the 1st count. Receiving stolen property in the 2nd count. Fraudulently concealing stolen property in the 3rd count.

In their verdict the jury reported guilty of the third count of the indictment concealing stolen property and fixed the sentence at three years maximum to be served in the penitentiary.

T.C.A. Section 39-4217 is as follows:

"39-4217. *Receiving stolen goods over one hundred dollars in value—Penalty.*—(A) Every person who shall fraudulently receive or buy any goods over the value of one hundred dollars ($100), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of receiving stolen property over the value of one hundred dollars ($100).

(B) Every person who shall fraudulently conceal or aid in concealing any goods over the value of one hundred dollars ($100), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of concealing stolen property over the value of one hundred dollars ($100).

(C) Any person found guilty of either receiving stolen property over the value of one hundred dollars ($100), or concealing stolen property over the value of one hundred dollars ($100), shall be imprisoned in the penitentiary not less than three (3) years nor more than ten (10) years."

The defendant contends that the jury verdict is inconsistent with the evidence that having acquitted the defendant of the 1st and 2nd counts of the indictment there was no proof that the defendant concealed the stolen property knowing it to have been stolen.

■ Of course the concealment of the stolen property must be accompanied by facts and circumstances indicative of an intent to deprive the true owner of the property and with knowledge that it was stolen.

In Moore v. State, 1 Tenn.Cr.App. 190, 432 S.W.2d 684, we said:

"At the Bar of this Court, defense counsel argued that the defendants' convictions are void for the reason that, under T.C.A. § 39–4217, there is no such offense as 'receiving and concealing stolen property' as charged in the indictments, that the indictments were void for that reason, and that no valid conviction could be based thereon. In taking this position, the defendants rely upon Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649, wherein our Supreme Court reaffirmed Jones v. State, 219 Tenn. 228, 409 S.W.2d 169, holding 'that the crime of concealing stolen property is an offense distinct from and independent of that of receiving stolen goods.' Simply stated, the defendants' insistence is that inasmuch as concealing stolen property and receiving stolen property are separate and distinct and independent crimes, they cannot be fashioned into a single crime by conjoining them or fusing them together in an indictment, and that when that is done no offense is charged and the indictment is void.

We do not so interpret Jones v. State and Deerfield v. State, supra. Those cases simply recognize the distinct and separate offenses embraced within T.C.A. § 39–4217; that is, that this statute declares it to be an offense (1) fraudulently to buy or receive property feloniously taken or stolen from another or obtained by robbery or burglary, knowing the same to have been so obtained and with the intent to deprive the true owner thereof, and (2) fraudulently to conceal or aid in concealing any such property with the same knowledge and intent. Of course, T.C.A. § 39–4218 is the companion statute applicable where the value of the property involved does not exceed $100.

In Jones v. State, supra, the Court quoted from Corpus Juris Secundum as follows:

'The crime of concealing, or aiding in concealing, stolen property is an offense distinct from that of receiving stolen goods; and concealment is not an essential element of the offense of receiving or buying stolen goods. The concealing does not require an actual hiding or secreting of the property, but any acts which render its discovery difficult and prevent identification, or which assist the thief in converting the property to his own use, are sufficient.' 76 C.J.S. Receiving Stolen Goods § 7, page 10.

And, in Deerfield v. State, supra, the Court said this:

'In Jones v. State (1966), 219 Tenn. 228, 409 S.W.2d 169, this Court, speaking through Mr. Justice Chattin, clearly enunciated the rule that the crime of concealing stolen property is an offense distinct from and independent of that of receiving stolen goods. In this plight, the case is properly one to be remanded for trial upon the charge of concealing stolen property.' "

■ We hold that the failure of the jury to convict the defendant of fraudulently buying stolen property as charged in the first count and the failure to convict

the defendant of receiving stolen property under the second count, did not affect their finding of guilty of concealing stolen property under the third count.

We cannot agree with defendant's contention that the trial judge erred in refusing to direct a verdict of not guilty at the close of the State's proof.

It is obvious, that since we have found the evidence does not preponderate against the verdict of the jury, that the motion for a directed verdict of acquittal was properly denied. Taylor v. State, 2 Tenn.Cr.App. 459, 455 S.W.2d 168.

The defendant's contention that there was no corroboration for the testimony of the alleged accomplice Tommy Kessey was not made a part of the motion for a new trial, and should not be considered.

It is well settled in Tennessee law that the trial judge will not be put in error on matters not brought to his attention for correction in the motion for a new trial. Questions raised for the first time on appeal will not be considered. See Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Hancock v. State, Tenn.Cr.App., 430 S.W. 2d 892.

However, as pointed out in the Attorney General's brief there was adequate evidence to support the testimony of Tommy Kessey. The defendant admitted he went out into the woods with Kessey and helped him load and haul these expensive items of personal property, where Kessey had hidden the stolen property. This stolen property was unloaded by the defendant and Kessey on defendant's back porch. There was credibile proof by other witnesses, in addition to Kessey, that the articles of property stolen from the Flat Creek School were clearly tagged and labeled "Flat Creek School, Bedford County Board of Education."

The assignments of error are overruled and the judgment is affirmed.

GALBREATH and O'BRIEN, JJ., concur.